Thank you very much to council. We will now proceed with the final case of the day, Nautilus Insurance Company v. Bee Quality Inc. Appeal number 251912. Mr. Philbrick. Thank you, Nautilus. Whenever you're ready. Thank you. May my words please this honorable court. I am Charles Philbrick, and I represent the defendant, Appellant Bee Quality, Incorporated, a Chicago-area construction company. There's three issues I'd like to discuss with the court this afternoon. First is, can an insurance company charge premium for a specific type or amount of insurance and then include a policy exclusion that swallows up substantially all that insurance coverage? The second question I'd like to discuss with you is, can judgment on the pleadings be awarded when the material facts are denied on the pleadings? And thirdly, I'd like to discuss whether NICOR v. Associated Electric, which is an Illinois appellate court decision, is that an appropriate legal authority for determining whether an exclusion renders a specific grant of coverage illusory? And obviously, I believe the answer to all those questions are no. But the district court disagreed, and I believe that the district court should be reversed with respect to all of those issues. And counsel, let me just ask you. I think your framing of that first question was, can an insurance company charge a premium for a certain type of coverage? I think that framing kind of gets at one of my questions. You might have been charged more than you should have been, but I don't think Nautilus went and said, well, this is a $6,000 premium for this type of insurance. They gave you a contract, they gave you the exclusions, and they said, here's the cost. Your argument in the paper seems to me to boil down to, we were charged so much money we assumed it was a certain type of insurance. But if I go out and buy an old car and pay the amount of a new shiny car, I can't complain that I got the old car. You can't complain about that. I agree with that. But buying a car and purchasing an insurance policy are very different matters. And in this particular context, Nautilus did indeed tell its insured B-Quality exactly what it was charging premium for. And that's set forth in the declarations page of the policy. And the policy was using a classification code system. A specific class code was utilized. A specific premium base was articulated. A specific amount of that premium basis was provided by my client. And then a rate for different components of the risk are articulated in the premium calculation. And specifically, there was a relatively high rate charged for completed products and completed operations coverage. Set forth specifically, not only in the Nautilus policy, but also in the Western world policies as well. But they didn't say completed when. No, they did not say completed when. They said completed operations coverage. And then the rate is a reflection of just how much insurance is being acquired. And the point of comparing how the premiums were calculated in the Western world policies, the policies for the two preceding years, is to show that in Western world policies, there was no limitation on the amount of completed operations coverage or when the completed operations needed to conclude. There was no limitation. But Nautilus charged essentially a higher rate and proportionately a bigger chunk of this policy premium for completed operations coverage. But then at the same time, included an exclusion that swallowed up virtually all of that completed operations coverage. Such that on day one of the policy, there was zero coverage for completed operations. And that, I submit to you, is precisely what the illusory coverage doctrine is. And I think I'd be with you if this was what is the coverage on day one. But on day one, this contract also had a term. So you're buying the right to continue to pay for that for the entire term of the contract. So it's not like you're paying $6,000 on day one only to get no coverage. You're paying that to have the right to continue to pay it and get all this completed coverage. Well, the only completed operations coverage that one could arguably have under the Nautilus policy would be for claims asserted that arise from operations that concluded during the policy period. So claims like the Griffin lawsuit, where the operations concluded a couple years or 16 months before, those are excluded. And when it's your point begins with this notion of it's kind of a caveat emptor argument, right? May the buyer beware. This is what you negotiated. This is what you got. But in the insurance context, that's not really appropriate because a classification rating system is being imposed here. This is not negotiated. And when an insured negotiates a restriction in coverage, there ought to be a commensurate restriction in the premiums paid. That's actually a point made in the visual PAC case, where the court is saying, we don't want to get into figuring out whether there's some coverage or substantially swallowed up because sometimes insureds negotiate less than the full coverage. And with that comes a commensurate reduction in the premium. Not only is there no reduction in the premium here, there's actually an increase in the premium here. Nautilus charged more than Western World for completed operations coverage. Western World provided unrestricted completed operations coverage, and Nautilus claims that it essentially excluded 10 years of operations. Call it one-tenth. Didn't charge one-tenth of the premium. Now, I would like to reserve some time for rebuttal. So at the moment, I'd like to step aside and allow counsel to proceed. Thank you very much. We have time. Thank you. Mr. Jaffe? Please proceed. Good morning, and may it please the court. My name is Adam Jaffe. I represent Nautilus Insurance Company. There's still two assessments. The resolution of this matter comes down to two straightforward issues that could properly dispose of this case. One of them is going to be the illusory coverage issue, which is probably more hotly contested, and I'll get to that in a moment. As a threshold matter, I want to talk about the exclusion itself found in the policy. To me, as a threshold matter, this might be the most important issue in disposing of the matter. The Nautilus policy, issued to be quality, included an exclusion entitled, Your Work Completed Prior to Specified Date Exclusion. With your indulgence, I'll just call it the prior work exclusion. The prior work exclusion bars coverage for bodily injury included in the product's completed operations hazard in arising out of your work that was completed by or on behalf of any insured prior to the date shown in the schedule. The exclusion shows in the schedule a date of February 8th, 2022, which is also the inception date of the policy. So simply put, the Nautilus policy does not provide coverage for injuries that arise out of B Quality's operations that were completed before February 8th, 2022. Here, we need to look no further than the pleadings itself, specifically the judicial admissions made in B Quality's own answer in the underlying case. Among other things in the answer, B Quality has admitted that they completed all their work on the property in December 2020, which is nearly 16 months before the date of the alleged incident that gave rise to the underlying lawsuit. They admitted that they completed all their work before February 8th, 2022. That's the date in the exclusion. And they admitted that they advised Nautilus after the claim had been filed that they completed all their work in December 2020. Again, these responses are judicial admissions under many cases like Crest Hill land development. And simply put, what it comes down to is that they have admitted that they completed their operations about 16 months prior to the unfortunate deaths of Mr. Wright and Mr. Morris, about 14 months before the date that's scheduled in the prior work exclusion. The prior work exclusion, it's plain, it's unambiguous, it's clear as day. It's found in the schedule of forms that are in the policy. It's written in all capital letters on a standalone page in the policy. I think we all know that under Illinois law, insureds, especially sophisticated insureds like a construction company, are charged with reading and understanding the contents of an insurance policy. This was not slid into the policy in the dead of night with the hopes of fooling someone to bar coverage in cases just like this. And in cases like Riccardi, which was a district court case in this district, the court expressly found that the prior work exclusion was clear and enforceable. I think they used the word pellucid. So moving now to the illusory coverage argument here. Judge Kohler, I think you hit on the precise point here. This sort of stems from a false premise that the exclusion swallows up substantially all, or I believe they used the words in a lot of their briefing, functionally all of the coverage provided. And that's not true because the standard for making this determination is not what was owed to the insured on day one. It was over the life of the policy. Illusory coverage is the old axiom that the left hand giveth what the right hand taketh away. This is not the case because under cases like NICOR and its progeny, this policy provides a considerable amount of coverage. If work was completed during the year-long policy period, that provides completed operations coverage is going to be provided. That's, to put a finer point on it, if an operation is completed on the very final day of the policy, coverage for that completed operation extends in perpetuity beyond this policy period. That's a good amount of coverage that's provided in this policy. Likewise, the determination about illusory coverage is not to be made by looking at a comparison with what was paid in prior policies. It's not made by combing through the underwriting file. It's made by looking at the plain language of the policy. Did the prior work exclusion gobble up substantially all of the coverage provided under the policy? And that's just not the case. The fact that they paid what they paid for the policy, we live in a world with a free market, and the time that they were provided with the quote through their agent, and they accepted the quote, the coverage provided under the policy is the best indication of the coverage provided is what the policy actually says. As I think about it, I liken it to sitting in a hotel room, and you're looking in the minibar, and you see a $9 Snickers bar. You can say to yourself, oh, well, I could buy the same thing for $1.50 at the gas station across the street, but the moment you open that Snickers bar, what you're entitled to is some nougat and peanuts, and caramel surrounded by chocolate. Likewise, when they agreed to the terms of this policy, which they were under no obligation to do, they could have stayed with Western World, they could have looked elsewhere in the market and found a policy more to their liking. What they were entitled to was the plain language of what was found in the policy. If there are no questions, I will end there. Thank you. Thank you. Mr. Philbert, rebuttal? Thank you, Your Honor. Yes. Was this endorsement slid into the policy? Did my client have lots of time to assess the coverage? Those facts aren't in the record. There's no fact in the record as to whether Nautilus issued this policy before it incepted. My client wasn't allowed any discovery, and Nautilus wasn't willing even to give up their underwriting file, which is, in the insurance context, shocking. So those arguments are not supported by the record. Counsel mentioned Riccardi. It's another Nautilus case just like this one, and they raised it in the district court as a reason for finding that the exclusion is unambiguous. They opened the door to the facts of that case, which are set forth in the policy Nautilus issued to Riccardi. Nautilus charged zero premium for completed operations coverage for Riccardi. It was the same classification code system. It was the same class codes. They're both contractors. The same premium basis, which was total value, slightly different, but no rate for completed operations coverage. There was none. Why? Because they excluded it all. Of course an insurance company can't charge premium for coverage that it's not providing. If they're going to reduce the coverage, the rate would have to be reduced too, and we know how they did it in Riccardi. They charged none. So counsel also mentioned admissions and the pleadings. Well, also we'd like you to focus on the fact that there are quite a few disputed facts that we submit or material facts in the pleadings, and as this court has said, Illinois law requires that provisions in insurance policies are interpreted in the factual context of the case. Factual context is broad category, such as what does my client do? That informs the risk. They denied that fact in the answer to our counterclaim. The fact that my client sells services and not products denied by Nautilus, that's really important because completed operations coverage is needed for providers of service, as opposed to, say, product liability. All of the facts, all of the facts concerning Western world policy, how the policies were calculated, all denied. And then most importantly, there's a fact in there. I'll jot it down to place in the record. We allege, B-Quality alleges, I'm out of time. You can just finish up your thought, Mr. Philpert. Thank you. Page 14 of Nautilus' answer, paragraph 60, we allege that the premium Nautilus calculated was for unrestricted completed operations coverage. They denied that fact. We ask that Your Honors reverse the court. We ask also alternatively to enter judgment with respect to Nautilus' duty to defend or otherwise remand so that we can make our case. Thank you very much. Thank you. Thank you, Counsel. The case will be taken under advisement and the court stands in recess.